UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION



FILED

OCT 2 4 2012

CLERK

| | | |
|---|---|---|
| IVAN GIBBONS, SR. and<br>IVAN GIBBONS, JR., | ) | CIV. 12-5035 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **ON DEFENDANTS' MOTIONS TO** |
| VINCENT PILCHER, | ) | **DISMISS** |
| NATE EISENMENGER, | ) | [DOCKET NOS. 17, 20 & 21] |
| CHIEF MEDEIROS, | ) | |
| CITY OF MARTIN, and | ) | |
| COUNTY OF BENNETT, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Plaintiff Ivan Gibbons, Jr., representing himself *pro se,* filed this action

pursuant to 42 U.S.C. § 1983 on June 5, 2012, alleging that defendants used

excessive force and racial profiling in connection with his arrest in the city of

Martin, county of Bennett, South Dakota, on the evening of April 30, 2012.

The name of plaintiff's father, Ivan Gibbons, Sr., also appears in the caption of

the complaint and in printed penmanship on the last page of the complaint.[1]

See Docket No. 1. The Honorable Jeffrey L. Viken, District Court Judge,

referred this entire case to this magistrate judge for management of pretrial

motions, either through the issuance of orders on nondispositive motions, or

---

[1]Mr. Gibbons, Sr.'s signature never appears on the complaint, as discussed more fully in
the body of this opinion.

through the issuance of reports and recommendations on dispositive motions. See Docket No. 26; 28 U.S.C. § 636(b)(1). Pending now are three motions to dismiss by various defendants, as discussed more fully below.

## FACTS

The following are facts pertinent to the three pending motions. Both Ivan Gibbons, Sr. and Ivan Gibbons, Jr, father and son, are listed as plaintiffs in this action in the caption of the complaint. See Docket No. 1. The complaint indicates that both plaintiffs reside at the Winner City Jail in Winner, South Dakota. Id. Mr. Gibbons, Jr. signed the complaint in cursive penmanship. Id. Mr. Gibbons, Sr.'s name appears immediately below his son's signature in printed penmanship. Id.

Accompanying the complaint is a motion by plaintiffs to proceed *in forma pauperis*. See Docket No. 2. That document, like the complaint, is filed in the names of both plaintiffs, Jr. and Sr. Id. Also like the complaint, the document is signed at the end with cursive penmanship by Jr., followed immediately underneath by Sr.'s printed name. Id. The motion contained an authorization to prison officials to assess, collect, and forward to the court the full amount of the filing fee in this case. Id. That authorization was signed in cursive by Jr. and signed with printed letters by Sr. Id. A prisoner trust account report for Jr. only was completed by the Winner County Jail and filed with the motion to

proceed *in forma pauperis*. See Docket No. 3. No prisoner trust account report was ever filed concerning Sr.

On June 5, 2012, the district court clerk's office sent a letter captioned to both Jr. and Sr., but the internal greeting on the letter is only to Jr. See Docket No. 4. The letter advises that the clerk's office received the complaint, motion to proceed *in forma pauperis*, and prisoner trust account report. Id. The letter does not separately address Sr. nor does it advise Sr. that no prison trust account report was ever received from him. Id. The letter further advised that a new case had been opened and that the case was assigned to Judge Viken. Id.

The district court apparently concluded that Sr. did not personally sign the complaint and that the printed name below Jr.'s cursive signature was put there by Jr. When the court granted the motion to proceed *in forma pauperis* on July 9, 2012, it did so only as to Jr. See Docket No. 6. As to Sr., the district court advised that Jr., as a non-lawyer, could not represent his father in these proceedings. See Docket No. 6, page 1, n.1. The district court's order was sent to Jr. only. See Docket No. 7.

The district court's order granting *in forma pauperis* status ordered that plaintiff complete a USM-285 form and a summons for each defendant. See Docket No. 6, page 3. The court then directed that the clerk of court issue a summons for each defendant for which plaintiff had submitted a summons and

USM-285 form.  Id.  The court further ordered that the United States Marshal

serve the completed summonses with a copy of the complaint and the court's *in

forma pauperis* order.  See Docket No. 6, page 3.

On July 23, 2012, Jr. wrote to the court and stated that he was not

attempting to represent Sr. and that both Jr. and Sr. were incarcerated

together in the Winner jail.  See Docket No. 13.  Enclosed in the same envelope

was a hand-written statement as to the facts of the events on April 30, 2012,

that was signed by Sr. in cursive penmanship.  See Docket No. 13-1.  Sr.'s

statement does not contain a caption, does not list any defendants, does not

have a title, and does not contain a prayer for relief.  Id.  There is a certificate

of service accompanying Jr.'s letter and Sr.'s narrative stating that "we" certify

that the enclosed documents were sent to the clerk's office on July 16, 2012.

See Docket No. 13-2.  The certificate of service is signed in cursive penmanship

by both Sr. and Jr.  Id.

Thereafter, both plaintiffs submitted and signed USM-285 forms for the

defendants, but not a separate form for each defendant.  Rather, plaintiffs

submitted one USM-285 form for Chief Medeiros, a separate USM-285 form for

Vincent Pilcher, and a separate USM-285 form for Nate Eisenmenger.  See

Docket Nos. 9-11.  The clerk accordingly issued three separate summonses for

these three defendants.  Id.  However, plaintiffs submitted a single, joint USM-

285 form for the city of Martin and the county of Bennett.  See Docket No. 8.

In response, the clerk's office issued a single, joint summons to these two governmental units. Id.

The United States Marshal personally served the Mayor of the City of Martin with the joint summons addressed to both the city and the county of Bennett. See Docket No. 15. No service of any kind was made on the Bennett County Auditor or on any member of the Bennett County Commission.

The Marshal served defendant Vincent Pilcher via facsimile at the place of business of his employer, the Pine Ridge Jail. See Docket No. 16. Mr. Pilcher did acknowledge receiving all 13 pages of the faxed documents consisting of the summons, complaint, and attachments. Id.

Three motions to dismiss are now pending. All defendants move to dismiss all claims of both plaintiffs for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). See Docket No. 17 In addition, Mr. Pilcher moves to dismiss the claims asserted against him because he was never properly served with the summons and complaint. See Docket No. 20. Finally, Bennett County moves to dismiss the claims against itself because it was never served with the summons and complaint at all. See Docket No. 21.

**DISCUSSION**

**A.**    **Motion to Dismiss for Failure to State a Claim–Docket No. 17**

    **1.**    **Standard for Ruling on Motions Pursuant to FED. R. CIV. P. 12(b)(6)**

Defendants' joint motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal if the plaintiffs have failed to state a claim upon which relief can be granted.  The United States Supreme Court has recently addressed the standard that district courts are to apply to motions to dismiss under Rule 12(b)(6).  That standard is described in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Supreme Court case law predating Twombly and Iqbal provided that to properly dismiss a claim under Rule 12(b)(6), the court "would have to conclude that there is *no set of facts* that would permit a plaintiff to demonstrate" legal entitlement to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  However, Conley was overruled in Twombly, with the Court abrogating Conley's "no set of facts" language.  Id.  Instead, the Court adopted a standard by which plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face."  Id. at 570 (emphasis added).

In so ruling, the Court then discussed the applicability of Rule 8(a)(2) to claims brought in federal court.  Id. at 554-55.  According to Rule 8, a plaintiff must plead only "a short and plain statement of the claim showing that the

6

pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Court acknowledged

that a complaint does not need "detailed factual allegations" to survive a

motion to dismiss, but emphasized a plaintiff's obligation to provide the

grounds for his entitlement to relief as requiring more than a mere recital of the

elements of his cause of action. Twombly, 550 U.S. at 555 (citing Papasan v.

Allain, 478 U.S. 265 (1986)). The Court imposed a "plausibility standard" and

held that a claim "requires a complaint with enough factual matter (taken as

true)" to support the conclusion that the plaintiff has a valid claim. Twombly,

550 U.S. at 556.

The Court rejected the notion that conclusory allegations were enough to

survive a 12(b)(6) motion to dismiss a claim. Id. at 556-57. The Court

explained, "[t]he need at the pleading stage for allegations plausibly suggesting

(not merely consistent with) [a valid claim] reflects the threshold requirement of

Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the

pleader is entitled to relief.' " Id. at 557 (quoting FED. R. CIV. P. 8(a)(2)). The

Court said the plaintiff must enhance his complaint with more specific factual

allegations  in order to cross the line between possibility and plausibility of

entitlement to relief.  Id.

In 2009, the Supreme Court decided Ashcroft v. Iqbal, and affirmatively

applied to all civil actions the standard set forth in Twombly for determining

whether a complaint is sufficient to survive a motion to dismiss. Iqbal, 556

U.S. at 684 (citing Twombly, 550 U.S. at 555-56 and 555 n.3). Iqbal put to rest any doubt whether Twombly was to be applied exclusively to antitrust litigation (as some commentators had guessed), or whether it had broader application to other civil cases. Because Twombly interpreted and applied Rule 8, the Iqbal Court said, Twombly was properly applied to "all civil actions and proceedings in the United States district courts." Id. at 684 (citing Fed. R. Civ. P. 1). Twombly thus delineates the proper pleading standard not only for antitrust cases, but for all civil actions.

The Iqbal Court expressly adopted Twombly's announcement that Rule 8 does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). The Court reaffirmed Twombly's determination that a complaint offering mere "labels and conclusions" or a "formulaic recitation of a cause of action" is insufficient to survive a motion to dismiss under Rule 12(b)(6). Id.

The Court explained that to survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The plausibility standard requires that the plaintiff allege more than a "sheer possibility" that the defendant committed the alleged unlawful conduct, but does not impose a "probability requirement" at the pleading stage. Id. (quoting

Twombly, 550 U.S. at 556). The plaintiff must, however, allege sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of [the conduct complained of]." Twombly, 550 U.S. at 556. Where a plaintiff pleads facts that are merely consistent with a defendant's liability, he has not "nudged [his] claim across the line from conceivable to plausible," and the complaint must be dismissed. Iqbal, 556 U.S. at 680 (citing Twombly, 550 U.S. at 570). There is no heightened requirement of fact pleading of specifics—only a requirement that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

The Court identified two "working principles" underlying its decision in Twombly. Iqbal, 556 U.S. at 678. First, courts are not required to accept as true legal conclusions "couched as [] factual allegation[s]" contained in a complaint. Id. (citing Papasan, 478 U.S. at 286). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting decision below Iqbal v. Hasty, 490 F.3d 143,

9

157-158 (2d Cir. 2007)).  Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*—but has not "show[n]"—that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679.

The Court explained that a reviewing court should begin by identifying pleadings that are not entitled to the presumption of truth because they are merely conclusory.  Id.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  Id.; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 680.

Finally, in addition to the above, the court is mindful that pleadings of *pro se* litigants, "however inartfully pleaded" are to be held "to less stringent standards than formal pleadings drafted by lawyers."  Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*)).  Nevertheless, the court must not assume the role of advocate for the *pro se* litigant nor "rewrite a complaint to include claims that were never presented."  Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999) (cited with approval in Palmer v. Clarke, 408 F.3d 423, 444 n.15 (8th Cir. 2005)).

## 2.    Application of Standard to Merits of Jr.'s Claims

Defendants argue that all of the claims in the complaint should be dismissed under the Iqbal standard because Gibbons' statements are either conclusory or conclusions of law.  The court notes that the "complaint" is a fill-in-the-blank form commonly made available to prisoners.

Count one of the complaint purports to assert claims for violation of the due process clause of the Fourteenth Amendment and for violation of the Eighth Amendment's prohibition on cruel and unusual punishment against Officer Vincent Pilcher.  Plaintiff Ivan Gibbons, Jr. asserts that the officer used excessive force in making his arrest and that Jr. was assaulted.  He also states the phrases "racial profiling," "discrimination," and "abuse to Native American plaintiffs" without elaboration.

Count two of the complaint also alleges a due process violation under the Fourteenth Amendment and a violation of the Eighth Amendment's prohibition on cruel and unusual punishment against Bennett County Sheriff's Deputy Nate Eisenbenger.  Plaintiff alleges that Deputy Eisenbenger used excessive force in arresting Jr. and committed an assault against him.  There is no allegation of racial profiling against Deputy Eisenbenger.

Count three of the complaint alleges a due process violation under the Fourteenth Amendment against Martin City Chief of Police Medeiras.  Plaintiff alleges that Chief Medeiras used excessive force in arresting him and violated

11

his due process rights. There is no allegation of racial profiling against Chief Medeiras.

In the prayer for relief, plaintiff seeks an end to racial profiling in Martin, South Dakota, including the firing of all police officers who engage in racial profiling and "per capita descrimination on Native Americans without cause, [and who] assault [Native Americans] without cause."

When plaintiff filed his complaint, he filed with it a narrative of the events giving rise to the claims written by Jr. See Docket No. 1-1. The court considers that document an addendum to the complaint which the court incorporates by reference into the complaint. In his statement, Jr. describes having been "stormed with aggressive force by Deputy Eisenmenger, who had his M-16 [weapon] drawn." Id. He described being on the ground with Officer Pilcher's knee in his side at the time. Id. Jr. stated that he saw Deputy Eisenmenger shove Sr. to the ground when Sr. was not making any move to approach the area where Jr. was. Id. Jr. states that he was tasered by Officer Pilcher when Jr. was already bending his knees, showing the officers that he was obeying their commands to get down on the ground. Id.

Jr. states that Chief Medeiros instructed the officers to leave the taser in Jr.'s back when transporting him to jail. Id. After arriving at the jail, Jr. alleges that Officer Pilcher grabbed the bottom taser prong and just yanked on it until it came out of Jr.'s back. Id. Then Jr. alleges that Deputy

Eisenmenger, with a smile, removed the other taser prong in the same manner. Id. When Jr. expressed his objection to this treatment by kicking the door handle, Officer Pilcher and Deputy Eisenmenger swore at him and dragged him out of the vehicle to the ground, where Deputy Eisenmenger drove his knee into Jr.'s neck. Id. Both officers held him down on the ground until additional officers arrived. Id. Jr. states that the officers ordered him to walk, but that the ankle bracelets were cutting off the circulation to his feet and he was unable to walk. Id.

The court assumes that Officer Pilcher and Deputy Eisenmenger have their own side of the story to tell about these events. However, the court cannot conclude that the above allegations are vague, conclusory or legal conclusions. They are very specific factual allegations about how Jr. thinks his constitutional rights were violated.

The claim of excessive force used in making an arrest is analyzed under the Fourth Amendment rather than the Fifth or Fourteenth Amendments' due process clauses. Graham v. Connor, 490 U.S. 386, 388 (1989). Such claims invoke the Fourth Amendment's prohibition against unreasonable seizures of the person. Id. at 395-96. Whether the force used to effect a particular seizure incident to an arrest was "reasonable" under the Fourth Amendment "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing

governmental interests at stake." Id. (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985) (quoting United States v. Place, 462 U.S. 696, 703 (1983))).

The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396. The Fourth Amendment's reasonableness test "is not capable of precise definition or mechanical application," so the application of the test requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Garner, 471 U.S. at 8-9; Bell v. Wolfish, 441 U.S. 520, 559 (1979)). The test is objective: whether the force used was reasonable under the circumstances is judged from the standpoint of a reasonable officer at the scene. Id. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" constitutes excessive force in violation of the Fourth Amendment. Id. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." Id. at 396-97.

Here, the court has only Jr.'s recitation of events. They are not so implausible as to allow the court to reach the conclusion that he cannot prove

up his claim of excessive force. With any balancing test, the totality of the circumstances is important to take into account. With only half the equation, the court cannot apply the test adequately. In addition to needing to know more about the officers' side of the story, the court knows nothing of the injuries sustained, if any, by Jr. during his arrest as a result of the officers' conduct. The court declines to recommend dismissal of Jr.'s excessive force claim on a Rule 12(b)(6) motion.

The court construes plaintiff's complaint to also allege a violation of the Eighth Amendment. That amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." See U.S. CONST. art. VII. However, at the time the events in question took place, Jr. was not a convicted prisoner. Rather, he was a newly-detained arrestee/detainee. The Eighth Circuit has held that claims of excessive force by pretrial detainees and arrestees should be analyzed under the Fourth Amendment's objective reasonableness standard rather than the Eighth Amendment, which applies to convicted prisoners. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001). For the same reason the court declines to recommend dismissal of plaintiffs' Fourth Amendment excessive force claim, the court declines to recommend dismissal of the Eighth Amendment claim, which is really the same claim.

Finally, the complaint can also be read to allege a claim of racial profiling. The court interprets this to be an assertion that Jr. was arrested or stopped on account of his race and without probable cause. See United States v. Gomez Serena, 368 F.3d 1037, 1041 (8th Cir. 2004). An arrest is constitutional no matter what the officer's subjective intent is as long as the officer has probable cause to believe that a crime occurred. Whren v. United States, 517 U.S. 806, 813 (1996). This is true even if the officer turns out to be mistaken about whether a crime has occurred. See United States v. Bueno, 443 F.3d 1017, 1024-1025 (8th Cir. 2006); United States v. Martin, 411 F.3d 998, 1000-1002 (8th Cir. 2005).

The court notes that the complaint contains no assertions about whether Jr. did or did not commit a crime; it merely describes the physical altercations that took place between Jr. and the officers. The complaint also contains no allegations about any policy or practice on the party of the city of Martin or the county of Bennett to arrest Native Americans without cause. Furthermore, even though Jr. describes in great detail the assaults he claims he suffered at the hands of defendants, he never states that he suffered these assaults because he is Native American. Jr. does not even allege that he *is* Native American. The court agrees with defendants that the complaint, even construed liberally, does not state a cause of action for violation of any

16

constitutional right due to racial profiling. The court recommends granting defendants' motion to dismiss the racial profiling claim.

### 3.    Application of the Standard to the Merit's of Sr.'s Claims

As discussed above, Sr. did not sign the original complaint filed in this case. His name does appear under the signature line in printed form. The district court concluded that this was not his signature. However, in response to the district court stating that it thought Sr. had not signed the complaint, Sr. submitted his own hand-written and signed account of what he says happened. Id. at 13-1.

In his statement, Sr. alleges that he did not observe Jr.'s initial arrest, handcuffing, and tasering. Id. Rather, when he came on the scene, Jr. was already on the ground, both handcuffed and tasered. Id. Sr. states that he was standing with a group of other persons watching the events about 10 to 20 feet away from where Jr. lay on the ground. Id. Sr. alleges that Deputy Eisenmenger pulled up to the scene in his patrol car, took out an AR-15 assault rifle and waived it around in the vicinity of where Jr. was laying. Id. Sr. writes that Deputy Eisenmenger told the spectators, including Sr., to step back. The deputy then repeated the command when no one moved. Sr. then alleges that Deputy Eisenmenger approached Sr. and shoved Sr. backwards, yelling at him to step back.

Sr. does not allege that he was harmed.  He does not allege that he fell. He does allege that other spectators, who were family members of his and Jr.'s were not shoved as he was.

Sr. alleges that he brought the conduct of Deputy Eisenmenger to the Sheriff's attention the next day.  The Sheriff asked Sr. if he wanted to sign a complaint against the deputy.  Sr. said he wanted the Sheriff to talk to Deputy Eisenmenger about his behavior.  The Sheriff told Sr. that he would speak to Deputy Eisenmenger about his behavior.

Defendants, in their motion to dismiss for failure to state a claim, do not address the allegations of Sr.  Sr.'s statement, together with Docket No. 1, may have been intended to constitute Sr.'s complaint, especially given the timing and sequence of events—i.e. that Sr. sent the court his statement after the court indicated that it did not consider Sr. to have joined in the complaint.

Defendants' sole argument for dismissal of Sr.'s claims is that he has never signed the complaint.  That appears to be true.  The signature on Sr.'s statement that he sent to the court at Docket No. 13-1 does not resemble Sr.'s name as it appears below Jr.'s name on the complaint at Docket No. 1.  Sr. may think that Docket No. 13-1 constitutes his complaint, but it does not.  It lacks a caption, Sr. does not state who the defendants are that he is asserting his claims against, he does not state which of his constitutional rights have been violated by defendants, nor what remedy he wants.  Accordingly, the

18

court will recommend that defendants' motion to dismiss all of Sr.'s claims against them be granted.

If Sr. desires to assert a claim or claims in this lawsuit, he may move to intervene in this action. Under Federal Rule of Civil Procedure 24(b)(1)(B), a party who has a claim that shares with the main action a common question of law or fact may seek to intervene in (i.e. join) a lawsuit. See FED. R. CIV. P. 24(b)(1)(B). However, as of this time, Sr. is not a party in this lawsuit before the court. As the district court explained, Jr. is not a lawyer. Therefore, although Jr. could sign the original complaint on his own behalf as a *pro se* litigant, he cannot sign anyone else's name to any pleadings and he cannot represent anyone else besides himself. See Elustra v. Mineo, 595 F.3d 699, 704 (8th Cir. 2010).

### B. Motions to Dismiss for Insufficient or No Service of Process–Docket Nos. 20 & 21

Vincent Pilcher was served by the United States Marshal via facsimile. He argues that serving via fax is not a proper method to accomplish service of process. He argues that the claims against him should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Bennett County was not served with the summons and complaint in this case at all. The county moves to dismiss the claims against it pursuant to Rule 4(j)(2) and SDCL § 15-6-4(d)(2)(1).

The court notes that neither Jr. nor Sr. have responded to either of these motions and the time for doing so has passed. Nevertheless, the court examines the law applicable to the county's and Mr. Pilcher's respective motions.

Under Rule 4(m), a plaintiff must serve each defendant with a summons and a copy of his complaint within 120 days after filing his complaint with the court. See FED. R. CIV. P. 4(m). If the plaintiff fails to do so, the district court "must" dismiss any claims against any unserved defendant unless the plaintiff demonstrates "good cause" for failing to accomplish service of process within the appropriate time frame. Id.

When serving an individual defendant, the plaintiff may deliver a copy of the summons and complaint to the defendant in person ("personal service"), may deliver a copy to an agent of the defendant who is authorized by law to receive service of process on behalf of the defendant, or by leaving the summons and complaint at the defendant's dwelling or usual place of abode with someone of suitable age and discretion who resides there. See FED. R. CIV. P. 4(e)(2). Each of these methods of service requires the process server to personally visit a person—if not the defendant himself, then the defendant's agent or household member.

Under Rule 4(e), service of process may also be made in accordance with state law. See FED. R. CIV. P. 4(e)(1). Under South Dakota state law, service of

the summons must be made by the sheriff or a constable of the county or other comparable political subdivision where the defendant may be found, or by anyone duly authorized to serve lawful summons by the law of the country where service is to be made. See SDCL §§ 15-6-4(c), 15-6-4(d). Service upon an individual defendant is to be made personally, unless otherwise directed by statute or rule. See SDCL § 15-6-4(d)(8). If the defendant cannot conveniently be found, then service may be made by leaving the summons and complaint with a member of the defendant's residence who is at least 14 years of age or older. See SDCL § 15-6-4(e).

Service of process by mail is allowed under Rule 4 and under South Dakota state law, but with qualification. The plaintiff may mail the summons and copy of the complaint to the defendant and enclose therewith an acknowledgment of service and a waiver of the need to personally serve the documents. See FED. R. CIV. P. 4(d); SDCL § 15-6-4(i). However, the defendant is not required to waive personal service of process. Id. If the defendant does not sign the acknowledgment and waiver of personal service of process and send the executed document back to the plaintiff, then the plaintiff must proceed to personally serve the defendant. Id. The court may later impose on the defendant who refused to waive personal service of process the costs incurred by plaintiff in obtaining that service. Id.

As to Bennett County, service of process on a local governmental unit such as a county must be made by personally delivering the summons and a copy of the complaint to its chief executive officer (here the chairperson of the county commission) or by serving the county in accordance with state law. See FED. R. CIV. P. 4(j). Under South Dakota state law, counties are served with process by personally delivering the summons and a copy of the complaint to any county commissioner. See SDCL § 15-6-4(d)(2)(i).

Here, it is clear that neither Vincent Pilcher nor Bennett County was properly served. Mr. Pilcher had the summons and complaint faxed to him. Under South Dakota law, even if he had been requested to acknowledge receipt of the documents and waive personal service of process, the rule is clear that the documents and the waiver must be *mailed* to him, rather than faxed. See SDCL § 15-6-4(i). Under federal law, the acknowledgment and waiver may be mailed to him by first-class mail "or other reliable means." See FED. R. CIV. P. 4(d)(1)(G). Faxing is probably an alternate "reliable means" under the federal rules, but the defendant must still execute an acknowledgment of receipt of the documents and a waiver of personal service of the documents. See FED. R. CIV. P. 4(d). There is no evidence in the record that the Marshal asked Mr. Pilcher to execute such a document, but if the Marshal did, no executed document was ever filed with the court. Service of process on Mr. Pilcher has not properly

been completed at this juncture. And more than 120 days have passed since Ivan Gibbons, Jr. filed his complaint with the court.

The same is true of Bennett County. The clerk requested the plaintiff to fill out a USM-285 form for *each* defendant named in the complaint. The plaintiff failed to follow these instructions when he submitted a single USM-285 form for both the city of Martin and Bennett County. Each of these defendants are separate political entities. Two USM-285 forms should have been filled out by plaintiff: one for the city of Martin, and one for Bennett County. Then the clerk should have issued two separate summonses, one for each defendant. And, finally, the Marshal should have served each defendant with its respective, separate summons and copy of the complaint.

Generally, it is the plaintiff's responsibility to see that his summons and complaint are served properly on each defendant named in his complaint. See FED. R. CIV. P. 4(c)(1); Byrd v. Stone, 94 F.3d 217, 219 (6th Cir. 1996). However, when a court grants a plaintiff *in forma pauperis* status under 28 U.S.C. § 1915(c), as the district court did in this case, the plaintiff is entitled to rely on the officers of the court to issue and serve all process. See Fed. R. Civ. P. 4(c)(3); Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 302 (1989); Rance v. Rocksolid Granit USA, Inc., 583 F.3d 1284, 1286-87 (11th Cir. 2009); Moore v. Jackson, 123 F.3d 1082, 1085-85 (8th Cir. 1997) (*per curiam*); Byrd, 94 F.3d at 219; Dumaguin v.

Secretary of Health & Human Servs., 28 F.3d 1218, 1221 (D.C. Cir. 1994), cert. denied, 516 U.S. 827 (1995); Puett v. Blandford, 912 F.2d 270, 273 (9th Cir. 1990); Sellers v. United States, 902 F.2d 598, 602 (7th Cir. 1990); Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987); Romandette v. Weetabix Co., Inc., 807 F.2d 309, 310 n.1, 311 (2d Cir. 1986).

When the Marshal fails to properly effectuate service of process, the *in forma pauperis* litigant should not be penalized for that failure. Rance, 583 F.3d at 1288; Moore, 123 F.3d at 1085-86; Byrd, 94 F.3d at 219; Dumaguin, 28 F.3d at 1221; Puett, 912 F.2d at 273-75; Sellers, 902 F.2d at 602; Romandette, 807 F.2d at 311. "So long as the prisoner has furnished the information necessary to identify the defendant, the marshal's failure to effect service 'is automatically good cause within the meaning of' " FED. R. CIV. P. 4(m). Moore, 123 F.3d at 1085-86.

In the Byrd case, the district court (after granting plaintiff *in forma pauperis* status) ordered the clerk's office to issue the summons and to deliver the summons and a copy of the complaint to the Marshal for service upon the defendant. Byrd, 94 F.3d at 218. The clerk never issued the summons. Id. When the plaintiff called the Marshal to ascertain whether service had been completed, he was told that it was "being taken care of." Id. The Sixth Circuit held that the district court abused its discretion under these facts in dismissing plaintiff's complaint for failure to accomplish timely service of

process. Id. at 219-20. The failure of the clerk and Marshal constituted automatic "good cause" for failure of the plaintiff to accomplish timely service of process on the defendant. Id.

In the Romandette case, the Marshal served an out-of-state corporate defendant with the plaintiff's summons and complaint by sending those documents via first-class mail with an acknowledgment of service, which the defendant signed and sent back in accordance with Rule 4(c)(2)(C)(ii). Romandette, 807 F.2d at 310. However, the defendant later moved to dismiss plaintiff's claims against it, arguing that under Rule 4(c)(2)(C)(i) service of process on an out-of-state corporation must be made in accordance with state law–here New York law–and that under state law, foreign corporations had to be personally served, not served via mail. Id. at 310, 310 n.2. The Second Circuit held that the district court abused its discretion in dismissing the plaintiff's suit for failure to properly serve the corporation within the time limits provided by Rule 4. Id. at 311-12.

Here, although the defendants have not been properly served within the 120-day time limit, the court finds good cause for the defects in service of both Mr. Pilcher and Bennett County. First, the court notes that Mr. Pilcher has has actual notice of Ivan Gibbons, Jr.'s complaint because he acknowledged to the Marshal that he had received the faxed summons and complaint. Until Mr. Pilcher made his motion to dismiss, plaintiff almost certainly had no idea

that service had not properly been effectuated on Mr. Pilcher. The same is true for Bennett County. Accordingly, the court will order the clerk to issue two new summonses—one for defendant Vincent Pilcher and the other for Bennett County. The court will then direct that these summonses be given to the Marshal, and that the Marshal properly serve both defendants in accordance with Rule 4. This court will recommend that the motions to dismiss by Vincent Pilcher and Bennett County be denied.

## CONCLUSION

Based on the above discussion, it is hereby RECOMMENDED:

1. that defendants' joint motion to dismiss the claims of **Ivan Gibbons, Jr.** [Docket No. 17] be granted in part and denied in part:

    a. the motion should be **denied** as to Ivan Gibbons, Jr.'s claim of excessive force;

    b. the motion should be **granted** as to Ivan Gibbons, Jr.'s claim of racial profiling;

3. that defendants' joint motion to dismiss [Docket No. 17] all the claims of **Ivan Gibbons, Sr.** be **granted** as to all claims asserted by him.

4. that defendant Vincent Pilcher's motion to dismiss [Docket No. 20] be **denied**; and

5.    that defendant Bennett County's motion to dismiss [Docket No. 21] be **denied**.

* * * * *

It is further

ORDERED that the clerk shall serve copies of this order on both Ivan Gibbons, Jr. and Ivan Gibbons, Sr. and shall also provide a copy to the United States Marshal.  It is further

ORDERED that, after the time period for objections to this report and recommendation has expired, if no party has objected to the portion of this report dealing with Docket Nos. 20 and 21, the clerk shall issue new summonses to Vincent Pilcher and to Bennett County and shall deliver the same to the United States Marshal.  Upon receipt, the Marshal shall serve the summonses along with a copy of all the documents found at Docket No. 1 on Vincent Pilcher and Bennett County in accordance with the law explained in this opinion.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See Fed. R. Crim. P. 59(b)(2).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to

require *de novo* review by the District Court.  Thompson v. Nix, 897 F.2d 356

(8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

      Dated October 24, 2012.

                            BY THE COURT:

                            VERONICA L. DUFFY
                            UNITED STATES MAGISTRATE JUDGE